468 So.2d 1360 (1985)
Emanuel ROBINSON
v.
VANGUARD INSURANCE COMPANY, et al.
Helen Nichols MILLS, et al.
v.
BEECH AIRCRAFT CORPORATION, INC., et al.
Nos. CW 84 1359, CW 84 1360.
Court of Appeal of Louisiana, First Circuit.
April 16, 1985.
Rehearing Denied May 20, 1985.
Writs Denied June 17 and 28, 1985.
Chester C. Williams, Baton Rouge, for plaintiff-respondent Emanuel Robinson.
Docia L. Dalby, Baton Rouge, for defendant-relator Beech Aircraft Corp.
Stephen H. Vogt, Baton Rouge, for defendant-respondent Vanguard Ins. Co., Helen Nichols Mills, Administratrix of the succession of Alva Ray Mills, et al.
Lisa Brener Cusimano, Lafayette, for plaintiff-respondent Helen Nichols Mills, *1361 Alice Mills Nolley, Mary Mills Corkern, Robyn Mills Oslan, Jody Hart Mills and Raymond Matthew Mills.
Howard Daigle, Jr., New Orleans, Dorcia L. Dalby, Baton Rouge, for defendant-mover Beech Aircraft Corp., Baton Rouge Beechcraft, Inc.
Before COLE, CARTER and LANIER, JJ.
LANIER, Judge.
These are consolidated suits for damage arising out of an airplane crash in Mississippi. The Robinson suit is by the Mississippi resident who owned the Mississippi property where the plane crashed. The Mills suit is by the Louisiana surviving spouse and children of a deceased Louisiana resident and asserts wrongful death, survival and redhibitory actions. The nonresident manufacturer of the airplane filed a declinatory exception in each case pleading the objection of lack of jurisdiction over the person. La.C.C.P. art. 925(5). The district court judges overruled the exceptions. On application of the manufacturer, this court granted a supervisory writ to consider the merits of the exceptions.

FACTS
The exceptions were tried on the following stipulations:
1.
Beech Aircraft Corporation has "transacted business" in the State of Louisiana as that phrase is used in La.R.S. 13:3201(a).[1]
2.
Beech Aircraft Corporation has derived "substantial revenue from goods used or consumed in this state" as that phrase is used in La.R.S. 13:3201(d).
3.
Beech Aircraft Corporation has been the defendant in other suits filed in the courts of the State of Louisiana based upon different factual allegations.
. . . . .
1.
Beech Aircraft Corporation designed, and in 1961 manufactured a model N35 Bonanza with serial number D-6751 and FAA registration number N1317Z. That aircraft crashed near McComb, Mississippi, on July 9, 1983, causing the instantaneous death of Alva Ray Mills.
2.
Bonanza N1317Z was first sold by Beech Aircraft Corporation to Southaire, Inc. in Memphis, Tennessee, by Bill of Sale dated May 26, 1961.
3.
Southaire, Inc. sold Bonanza N1317Z to Wiles-Holloway, Inc. of Baton Rouge, Louisiana, by Bill of Sale dated May 26, 1961.
4.
Wiles-Holloway, Inc. sold Bonanza N1317Z to Hood Realty and Development Company, Inc. of Amite, Louisiana, by Bill of Sale dated May 31, 1961.
5.
Hood Realty and Development Company, Inc. sold Bonanza N1317Z to Wiles-Holloway, Inc. of Baton Rouge, Louisiana, by Bill of Sale dated August 31, 1963.
6.
Wiles-Holloway, Inc. sold Bonanza N1317Z to C.E. Major, Jr., M.D. of White Castle, Louisiana, by Bill of Sale dated October 22, 1963.
7.
The estate of Dr. C.E. Major, Jr. then sold Bonanza N1317Z to Lonnie H. Bearry *1362 of Baton Rouge, Louisiana, on the 20th day of December, 1982, who in turn sold the aircraft to Bonanza 17 Zulu, a coownership of Lonnie H. Bearry; A.R. Mills; and S.B. Simpson, by Bill of Sale dated December 20, 1982.
8.
The aircraft was then destroyed in an accident near McComb, Mississippi, on July 9, 1983.
9.
Beech Aircraft Corporation is a foreign corporation which has never registered its business affairs in Louisiana with the Secretary of State.

JURISDICTION OVER THE PERSON
Relator, Beech Aircraft Corporation (Beech), contends the causes of action alleged in these suits do not arise out of any business conducted by Beech in the State of Louisiana and, as a matter of state law, there is no jurisdiction over the person. Respondent Robinson contends Beech's exception is rendered moot because "personal service of process is sufficient to confer personal jurisdiction over Beech as to respondent's cause of action." The Mills respondents contend (1) although Beech did not directly sell the airplane to a Louisiana resident, the circumstances are such that Beech "knew and consented to the fact that the airplane was going to be sold in Louisiana"; and (2) since the purchase of the airplane in Louisiana by the deceased (with others) was a natural result of the general business activity of Beech in Louisiana, the cause of action arose from Beech transacting business in this State as provided in La.R.S. 13:3201(1).[2]
To determine if Louisiana has personal jurisdiction over Beech, a dual inquiry must be made: (1) Does the Louisiana long-arm statute (La.R.S. 13:3201[1]) provide for assertion of jurisdiction in the context of the facts of the case; and (2) is the assertion of jurisdiction by Louisiana constitutionally permissible, that is, will the exercise of personal jurisdiction over Beech be consonant with "traditional notions of fair play and substantial justice" and did Beech have sufficient "minimum contacts" with Louisiana to satisfy due process? Pedelahore v. Astropark, Inc., 745 F.2d 346 (5th Cir.1984). Since Beech has stipulated it has "transacted business" and derived "substantial revenue from goods used or consumed" in this state, it has sufficient "minimum contacts" with this state to satisfy due process and that inquiry is no longer at issue.
Prior to 1964, personal jurisdiction over a nonresident was determined under La.R.S. 13:3471 which provides, in pertinent part, as follows:
The following rules supplement those governing the service of citation and other legal process in a civil action or proceeding contained in the Code of Civil Procedure:
(1) If the foreign corporation is not one required by law to appoint an agent for the service of process, but has engaged in a business activity in this state, service of process in an action or proceeding on a cause of action resulting from such business activity in this state, or for any taxes due or other obligations arising therefrom, may be made on any employee or agent of the corporation of suitable age and discretion found in the state. [Emphasis added].
For purposes of the instant case, the decisions in Nigro v. Cessna Aircraft Company, 169 So.2d 594 (La.App. 4th Cir.1964), Covington v. Southern Specialty Sales Company, 158 So.2d 79 (La.App. 1st Cir. 1963) and Home Gas & Fuel Co. v. Mississippi Tank Co., 143 So.2d 641 (La.App. 3rd Cir.1962) show how this law was interpreted. *1363 In Home Gas, a Louisiana plaintiff sustained property damage in this state when an accidental fire occurred on its premises. The plaintiff alleged the fire was caused by negligence of a nonresident (Mississippi) manufacturer in failing to install a safety device on a butane tank on a butane delivery truck. The evidence showed the butane tank was manufactured and delivered without any contact with Louisiana, and was ordered in a telephone call from Louisiana to Mississippi. In finding Louisiana had personal jurisdiction over the Mississippi manufacturer, the court observed as follows:
We believe that these facts show conclusively that the Mississippi Tank Company, over a period of years, has consistently and actively engaged in a business activity in the State of Louisiana. There is very little more they could be doing in this state and it is obvious that they have solicited business and engaged in a business activity in this state. It is admitted that the delivery unit in question in this particular suit was not purchased by direct solicitation. It is further conceded that the evidence establishes that the tank involved in this particular suit was ordered by phone from Louisiana. However, we do not agree with the ruling of the trial court that substituted service allowed by this statute is limited to a proceeding on a cause of action directly resulting from a business activity carried on in this state.... As the evidence clearly demonstrates that the Mississippi Tank Company has actively engaged in soliciting business in the State of Louisiana over a long period of time, it is inconceivable that this statute could be construed to hold that the plaintiff herein cannot bring suit against the Mississippi Tank Company merely because this particular transaction was not a result of a direct solicitation by the defendant company.
As the Mississippi Tank Company has sold a great number of its products in this state and is actively engaged in considerable business in this state, the plaintiff would not have purchased products from them had they not been familiar with the type of products sold by the Mississippi Tank Company in the State of Louisiana. To allow the Mississippi Tank Company to escape liability and force the defendant to proceed with its cause of action at the company's domicile in the State of Mississippi would be a great injustice. But for the prior activity of the defendant company in this state, it would never have received an order for the production of this particular delivery tank and thus, its sale was actually a result of the business activity of the Mississippi Tank Company in the State of Louisiana.
In our increasing industrial economy, it is evident that a great many products are ordered by phone and by mail from concerns and businesses located in a great number of states. Salesmen travel in numerous states of this country advertising their company's products. Some orders are taken directly, some made by phone or mail after reflection by the prospective purchaser. It should make no difference how the order was received when the foreign corporation attempts and does considerable business within the borders of this state and fails to comply with the law of qualifying to do business within this state. This is not a case of an isolated sale to a Louisiana resident. The defendant company has been selling its goods in this state in great numbers. The persons engaged in the butane business by necessity are familiar with the quality of the merchandise sold by the defendant company in this state. Surely this cause of action resulted from a business activity carried on by the Mississippi Tank Company in this state.[3]

Home Gas & Fuel Co., 143 So.2d at 645-646.
*1364 In Covington, a mechanic employed by a Louisiana retail dealer of lawn mowers was injured when an allegedly defective engine on a lawn mower caused injury to him while he was in the course of his employment. Made defendants in the suit were the Iowa manufacturer of the gasoline engine which formed a part of the mower and the Illinois manufacturer of the mower. The court framed the issue to be decided as "whether defendants ... have engaged in such business activity within this state as to subject their respective persons to the jurisdiction of our courts." The defendants contended Louisiana did not have jurisdiction over their persons "because the cause of action herein asserted is not shown to have arisen out of the business activity conducted by defendant in the state." The court found personal jurisdiction over the nonresident manufacturers with the following rationale:
While it does not affirmatively appear the engine in question was sold in Louisiana as the result of the activities of Clinton's [Iowa manufacturer] sales representative, as herein previously shown, it is conceded defendant's sales representative calls on defendant's distributor as well as numerous retail dealers handling defendant's engines for the express purpose of encouraging and promoting the sales of defendant's products by furnishing detailed technical advice and assistance in the use, servicing and ordering thereof. Under such circumstances, it is clear the actions of defendant's sales representatives unquestionably increased, to considerable degree, good will toward defendant and its products with consequent significant effect upon the extent of the use of defendant's goods and the volume of defendant's merchandise sold in the state. Considering such circumstances, we believe it cannot be logically contended the sale of the engine in question and its use within this state did not result from and was not incident to the activity of defendant's agents.
. . . . .
While the record does not indicate contact by Falls [Illinois manufacturer] within the State of Louisiana beyond the indicated visits of the aforementioned nonresident manufacturer's representative and neither is it shown with certainty the volume of Louisiana business thusly produced, nevertheless, it affirmatively appears this method of operation resulted in sales to Louisiana customers. In this connection, it is significant to note defendant's concession that the mower which allegedly caused plaintiff's injury, though manufactured and assembled by Falls outside Louisiana, was in fact sold to plaintiff's employer, Miranda Sales Company, by Southern Specialty Sales, a distributor.
. . . . .
The present defendant's voluntary act of sending sales representatives into this state for the express purpose of soliciting sales of defendant's merchandise admittedly resulting in sales of defendant's products, in our judgment, satisfies the requirement of minimal contact necessary to render Falls amenable to the jurisdiction of our courts without doing violence to the traditional notions of fair play and substantial justice guaranteed by the due process clause of the Fourteenth Amendment to the Federal Constitution. Here defendant Falls has intentionally, deliberately and purposefully availed itself of the privilege of conducting a direct sales campaign to promote sales of its products within the state by personal contact with prospective or potential customers thus invoking the benefits and protections of our laws. This is no unilateral action on plaintiff's part as was rightfully condemned in the Hanson case, supra, but rather a voluntary entry into the state by defendant through duly constituted agents and representatives appointed for the sole express purpose of selling defendant's products.[4]
*1365 Covington, 158 So.2d at 87-89.
In Nigro, the plaintiff was the pilot of an airplane manufactured by a nonresident manufacturer which crashed because of an alleged defect and caused him injury.[5] In finding that Louisiana had personal jurisdiction over the airplane manufacturer, the court reviewed Home Gas and Covington and held as follows:
As Cessna manufactures aircraft and aircraft parts, and engages in a considerable amount of sales and service promotional work in furtherance of its sales in Louisiana thereby reaping considerable economic benefit from the citizens of Louisiana, we must disagree with the district court and hold that Cessna was doing business in Louisiana and subject to the jurisdiction of its courts.

Nigro, 169 So.2d at 598.
See also Cleveland, Personal Jurisdiction over NonresidentsThe Louisiana "Long-Arm" Statute, 40 Tul.L.Rev. 366 (1966).
In 1964, La.R.S. 13:3201 was enacted. Subparagraph (1) thereof is relied on by the respondents to establish personal jurisdiction over Beech and provides as follows:
A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
[Emphasis added].
Reporters comments (a) and (d) for La.R.S. 13:3201 provide as follows:
R.S. 13:3201 through 13:3207 were adopted on the recommendation of the Louisiana State Law Institute to permit the courts of this state to tap the full potential of jurisdiction in personam over nonresidents permitted by International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
. . . . .
"Transacting business", as used in Subdivision (a), is a term which is much broader than "doing business" as defined by earlier Louisiana cases, and the phrase "does * * * business" of Subdivision (d) conferring personal jurisdiction over a nonresident on a cause of action arising ex delicto or quasi ex delicto. It is intended to mean a single transaction of either interstate or intrastate business, and to be as broad as the phrase "engaged in a business activity" of R.S. 13:3471(1).
La.R.S. 13:3202, enacted at the same time as 13:3201, provides as follows:
When personal jurisdiction over a nonresident is based solely upon R.S. 13:3201, only a cause of action arising from acts or omissions enumerated therein may be asserted against him.
Reporters comment (c) for 13:3202 provides, in pertinent part, as follows:
The purpose of this section is to preclude the cumulation of a cause of action completely unrelated to any of the acts or omissions enumerated in R.S. 13:3201, and with respect to which the court would have no personal jurisdiction over the defendant, with a cause of action included in R.S. 13:3201.
La.R.S. 13:3201 must be liberally interpreted in favor of finding jurisdiction. Thompson v. Great Midwest Fur Company, 395 So.2d 840 (La.App. 1st Cir.1981). The legislative intent for enacting La.R.S. 13:3201 was to extend personal jurisdiction of Louisiana courts over nonresidents to the full limits of due process. Soileau v. Evangeline Farmer's Co-op, 386 So.2d 179 (La.App. 3rd Cir.1980).
For purposes of the instant case, the decisions in Alba v. Riviere, 457 So.2d 33 (La.App. 4th Cir.1984), writ denied, 462 So.2d 194 (La.1984), Gertler v. Gondola *1366 Ski Shop, Inc., 384 So.2d 856 (La.App. 4th Cir.1980), writ denied, 392 So.2d 682 (La. 1980), Hunt v. Fireman's Fund Insurance Co., 345 So.2d 1235 (La.App. 1st Cir.1977), Cambre v. St. Paul Fire and Marine Insurance Company, 331 So.2d 585 (La.App. 1st Cir.1976), writs denied, 334 So.2d 434, 435 (La.1976) and Rush v. Matson Navigation Company, 221 So.2d 265 (La.App. 2nd Cir.1969), show how La.R.S. 13:3201(1) has been interpreted.
In Rush, a Louisiana plaintiff alleged she was negligently injured aboard a cruise ship owned by a California corporation while the ship was enroute from Hawaii to California. The court found Louisiana had no personal jurisdiction over the nonresident cruise ship owner with the following rationale:
Louisiana Revised Statute 13:3202 limits the blanket use of the foregoing "long arm statute" as follows:
"When personal jurisdiction over a nonresident is based solely upon R.S. 13:3201, only a cause of action arising from acts or omissions enumerated therein may be asserted against him." Added Acts 1964, No. 47, § 3. (Emphasis added)
Plaintiff-appellant relies upon sections (a) and (d) of R.S. 13:3201 as affording the jurisdictional basis of this suit.
We find the provisions of La.R.S. 13:3201 are positive and free of ambiguity. The statute confers jurisdiction only:
(1) where one of the jurisdictional bases enumerated in subsections (a) through (e) is present; and then only
(2) where the cause of action arises from one of the jurisdictional bases specified.
Jurisdiction does not exist here under subsection (d) as it is expressly limited to cases in which the nonresident has caused "injury or damage in this state * * *". Appellant's injuries were concededly received while traveling between Hawaii and California. If subsection (a) is relied upon plaintiff must show defendant has transacted business in this state and also the cause of action is one "arising from" its business so transacted.
Appellant urges the agency agreements between Matson and the local travel agencies give the courts of Caddo Parish jurisdiction over defendant. However, plaintiff's cause of action was not related in any way to the agreements between defendant and the agencies.
Appellant contends when a nonresident transacts business of a nature similar to the one out of which a plaintiff's claim arises the requirements of subsection (a) of the cited statute are satisfied. In support of this argument plaintiff relies chiefly upon Home Gas and Fuel Company v. Mississippi Tank Company, 143 So.2d 641 (La.App. 3 Cir.1962) and Aucoin v. Hanson, 207 So.2d 834 (La.App. 3 Cir.1968). We find both distinguishable from the case before us.
Plaintiff's claim in Home Gas was for damage to its warehouse which burned in Louisiana; therefore, the cause of action was unquestionably a Louisiana cause of action. Suit was brought and service of process was accomplished under the provisions of La.R.S. 13:3471(1). The court found defendant corporation had transacted business in Louisiana by sending its salesmen into the state to solicit business and by selling many domestic butane systems in the state. Although the particular butane delivery truck which caused the fire was purchased from defendant nonresident corporation by means of a telephone order, nevertheless the foreign corporation was held amenable to the jurisdiction of the Louisiana court. The court reasoned that the order would never have been placed were not the defendant and its products known in this state by virtue of its former business activities here. The significant portion of the holding, insofar as it may bear by analogy on the interpretation of the statute here involved, was despite the fact that the particular transaction giving rise to plaintiff's cause of action was not a Louisiana transaction it nevertheless resulted from defendant's prior business of a similar *1367 nature in this state. The court held the question of whether or not defendant was engaged in a business activity in this state was purely factual and concluded defendant corporation had sufficient minimum contacts with Louisiana to satisfy constitutional due process. In addition, it held as a fact the cause of action resulted from the business activity carried on by defendant in this state.
From the facts before us we find no connexity between plaintiff's cause of action and defendant's business activity within Louisiana. There is no evidence the ticket was purchased from Matson as a result of any activity conducted here by defendant.

Rush, 221 So.2d at 266-267.
In Cambre (which is authored by the same judge as Covington), a Louisiana plaintiff alleged she was injured by medical malpractice in Mississippi. She sued a Mississippi medical partnership composed of doctors who were all domiciled in Mississippi, a former member of the partnership who was presently residing in Louisiana, and the partnership's insurer. In finding Louisiana had no personal jurisdiction over the nonresident partnership, the court observed as follows:
The stipulated facts presented herein, render unnecessary a consideration of the due process aspects of Partnership's exception to personal jurisdiction, because La.R.S. 13:3201 does not, itself, extend jurisdiction to a non-resident defendant in Partnership's situation. As noted in Rush v. Matson Navigation Company, La.App. [1969], 221 So.2d 265, La.R.S. 13:3201 confers jurisdiction on a nonresident defendant only when one of the jurisdictional bases therein specified is found to be present and the cause of action sued upon arises from one of the enumerated jurisdictional bases.
It is clear that Appellant's injury did not arise from Partnership's transaction of any business in this state. Equally evident is the fact that Appellant's injury occurred in Mississippi from an operation performed in a Mississippi hospital. Appellant's injury did not result from a Partnership contract to supply services or goods in this state; all services rendered Appellant under her contract for the surgery were supplied and rendered to appellant in Mississippi. Defendant Partnership committed no offense or quasi offense in this state, nor did it cause Appellant injury or damage in this state by an offense or quasi offense committed elsewhere.

Cambre, 331 So.2d at 590.
In Hunt, a Louisiana plaintiff was injured in an automobile accident in Alabama. The driver of the vehicle in which the plaintiff was a guest passenger was an Alabama resident who was killed in the accident. The plaintiff sued the estate of the Alabama driver, his insurer and the insurer of the Louisiana owner of the vehicle. In finding that Louisiana had no personal jurisdiction over the estate of the deceased Alabama driver, the court observed as follows:
Nonetheless, plaintiff relies on the above language in Cambre and correctly states that the intent of the legislature in adopting R.S. 13:3201 was to accomplish just such a purpose. However, plaintiff further reasons that Lindsay is subject to the jurisdiction of the courts of this state because he knowingly undertook to drive a vehicle which he knew belonged to a Louisiana resident and was in the act of transporting a passenger whom he knew to be a Louisiana domiciliary under conditions foreseeable to him that his negligent operation would cause damage in Louisiana. We reject this effort to extend the applicability of R.S. 13:3201.
R.S. 13:3201 [§ (a) through (e)] specifies the jurisdictional bases for its application. This statute must be read in conjunction with R.S. 13:3202, which clearly provides that "When personal jurisdiction over a nonresident is based solely upon R.S. 13:3201, only a cause of action arising from acts or omissions enumerated therein may be asserted against him." (Emphasis ours)
It is obvious from a reading of the express provisions of R.S. 13:3201 that the statute provides no basis by which a *1368 Louisiana court may extend its jurisdiction to a nonresident defendant in the situation of Lindsay's estate. No activities within the state have been attributed to him. He transacted no business in the state, supplied no things or services within the state, and committed no offense or quasi offense within the state. The injuries suffered by his alleged negligent operation of the vehicle can not be said to have been caused within the state. The district court was correct as a matter of law in sustaining the exception of lack of jurisdiction over Lindsay on the basis of R.S. 13:3201. Rush v. Matson Navigation Co., 221 So.2d 265 (La.App. 2nd Cir.1969).

Hunt, 345 So.2d at 1237-1238.
In Gertler, Louisiana plaintiffs attended a seminar in Colorado. Prior to leaving on the trip, they arranged through a Louisiana travel agent to rent ski equipment from a Colorado ski shop. The ski equipment was manufactured by a nonresident (the opinion does not show in what state). In ruling Louisiana had no personal jurisdiction over the nonresident manufacturer, the court quoted with approval from Rush and held as follows:
In the present case plaintiff was injured in Colorado. Therefore, the non-resident defendant has not caused "injury or damage in this state".3 Moreover, there is no connection between plaintiffs' cause of action and business activity carried on by defendant in Louisiana. There is no allegation or evidence that defendant's skis were sold or otherwise became part of commerce in Louisiana and were then transported for use to Colorado. Nor was there any contact between plaintiffs and defendant in Louisiana. Consequently, plaintiffs' cause of action does not arise from the non-resident defendant's transacting business in Louisiana.
3. We reject, as totally without merit, plaintiffs' argument that medical treatment and pain in this state which resulted from the injury in suit, brings this matter within "Causing injury or damage" of subparagraph (d). It is clear those words refer to personal injury or property damage.
Gertler, 384 So.2d at 858.
The court then discussed World-Wide Volkswagen Corporation v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and observed as follows:
The court stated a forum state may assert personal jurisdiction over a corporation which delivers its products into the stream of commerce with the expectation they will be purchased by consumers in the forum state. However, a forum state may not assert jurisdiction merely because it was foreseeable to the seller that its product would be taken by the purchaser to another state and cause injury there.
A corollary to this decision is that a forum state does not gain jurisdiction over a corporation which manufactures a defective product delivered to a state other than the forum state and the injured plaintiff travels to the non-forum state and sustains injury by use of the product there. A party cannot be made defendant in Louisiana merely because it is foreseeable that his product might injure a Louisiana resident while the latter was using it in another state.

Gertler, 384 So.2d at 859.
In Alba, a Louisiana plaintiff suffered decompression injury (the bends) while diving in Belize, allegedly because of defectiveness of two decompression meters. The meters were manufactured in Italy. In this case, the court described the parties defendant and found the Louisiana court did not have personal jurisdiction over them with the following rationale:
The manufacturer is Strumenti Ottici Subacquei, or SOS Torino. SOS sells its meters through distributors. The Delaware distributor (whose main office may be California) is Undersea Industries, Inc., or Scubapro. Scubapro is a distributor for SOS in America. It distributed one of the two meters in question to Texas or California where it was sold at retail. That meter was later sold as used to plaintiff in Louisiana. The German distributor is Barakuda Bergann KG. Barakuda claims to have only one `customer' in the United States, P & P *1369 Industries of Kentucky. P & P in fact distributed the second meter in question to a retailer in Louisiana who sold it to plaintiff.
. . . . .
Plaintiff in brief concedes that subd. (d) is not applicable because plaintiff was not injured "in this state." Subd. (d) does not authorize a Louisiana suit against a nonresident for delictual behavior outside of Louisiana that causes injury outside of Louisiana.
(Although no one suggests its applicability, we note that subd. (c) would allow suit for delictual behavior inside Louisiana that causes injury outside Louisiana. We may also note that subd. (b) is not applicable because this is not an action on a contract to supply.)
Subd. (a) allows suit against a nonresident for injury caused outside of Louisiana, but only if upon a "cause of action arising from" transacting business in this state. That the nonresident transacts frequent and substantial business does not confer jurisdiction upon Louisiana courts under subd. (a), unless the cause of action arises from Louisiana transactions by the nonresident.
SOS, the meters' manufacturer, may have through its distributors had sufficient contacts with Louisiana to make it subject to jurisdiction under subd. (d) if its act of defectively manufacturing in Italy caused injury inside Louisiana; see Boykin v. Lindenkranar, 252 So.2d 467 (La.App. 4 Cir.1971), writ refused [260 La. 15], 254 So.2d 618 [(1971)]. But SOS did not transact any business in Louisiana in a contractual sense, or by a presence in Louisiana (except insofar as package insert literature suggested returning meters to the factory for repair or calibration), and plaintiff's cause of action cannot fairly be said to be one "arising from" SOS's transacting business here within subd. (a).
Similarly Barakuda did not transact any business in Louisiana within subd. (a). Its sale to P & P of Kentucky did not occur in Louisiana, although P & P's sale to the Louisiana retailer may well have here occurred.
Scubapro did transact business in Louisiana by supplying meters for sale here, but it did not supply for sale here the meter that allegedly injured plaintiff in Belize. In respect to that meter, Scubapro transacted business in Texas (or California) by selling it to a Texas (or California) retailer. In respect to that meter, the Texas (or California) retail purchaser who first purchased it, or a later owner who acquired from him, might have transacted business in Louisiana by selling it to or through the dealer who sold it as a used meter to plaintiff, but that was not a transaction of business in Louisiana by Scubapro. Plaintiff's cause of action is not one "arising from" any transaction of business by Scubapro in Louisiana.
R.S. 13:3201 does not purport to authorize Louisiana courts to exercise jurisdiction over plaintiff's cause of action against any of these three defendants.
Alba, 457 So.2d at 34-35.
In Alba, Gertler and Rush, the alleged torts and the damage caused by them occurred outside Louisiana. Personal jurisdiction was asserted because the nonresident defendant transacted business in Louisiana. No personal jurisdiction was found by the courts because there was no nexus between the business transacted by the nonresidents and the causes of action asserted by the plaintiffs.
We believe Alba, Gertler and Rush are applicable to the facts of the instant case. The allegedly defective aircraft manufactured in Kansas by Beech (a nonresident) crashed and caused damage in Mississippi to a Mississippi property owner and the Louisiana survivors and heirs of a Louisiana part owner of the plane. We believe Home Gas and Covington are factually distinguishable because in both cases, although the defective product was manufactured outside Louisiana, the accidents and damages occurred in Louisiana.[6] Further, in Home Gas and Covington, the *1370 courts found as fact the causes of action resulted from the nonresident manufacturers' business activities in Louisiana. In the instant case, the stipulations of fact do not show as fact that the causes of action of Robinson and the Mills group arose from Beech's transaction of business in this state.[7]
The district court judge in the Mills case cited Galle v. Allstate Insurance Company, 451 So.2d 72 (La.App. 4th Cir.1984) as authority for finding personal jurisdiction over Beech herein. The record in Galle shows a Louisiana plaintiff was accidentally injured while riding as a guest passenger in a Datsun camper truck. A Florida manufacturer fitted the Datsun chassis with the camper assembly, apparently in Florida. The record does not reflect where the accident occurred. The Florida manufacturer sold the camper to a Louisiana Datsun dealer who in turn sold it to a Louisiana resident. The camper was resold to a second Louisiana resident. The court did not specifically discuss La.R.S. 13:3201(1) and indicated the Louisiana Datsun dealer was relying on subparagraph (4), rather than (1), to secure jurisdiction over the Florida manufacturer on its third party demand. The bulk of the court's opinion is directed to a discussion of whether the nonresident manufacturer had "minimum contacts" with Louisiana to satisfy federal due process (an issue which has been stipulated in the instant case). Galle is distinguishable from the instant case.
The claim by Robinson that personal service of process on Beech is sufficient to confer personal jurisdiction is patently without merit. Swann v. Performance Contractors, Ltd., 271 So.2d 294 (La.App. 3rd Cir.1973), writ denied, 273 So.2d 847 (La.1973) and the cases cited therein.

DECREE
For the foregoing reasons, the writ issued herein is made peremptory, the judgments complained of are reversed, Beech's exceptions pleading the objection of lack of jurisdiction over the person are sustained and respondents' suits against Beech are dismissed. Respondents are cast for the cost of this appeal.
REVERSED.
NOTES
[1] La.R.S. 13:3201(a) through (h) were redesignated subparagraphs (1) through (8) when this statute was amended in 1984.
[2] Typically, a products liability case against a nonresident manufacturer is brought under La. R.S. 13:3201(3) or (4). Subparagraph (3) applies when the cause of action arises from activities of a nonresident which cause injury by tort committed in this state. Subparagraph (4) applies if a tort committed outside the state causes damage in this state and the nonresident transacts business in this state. In the instant case, the alleged tortious manufacturing occurred in Kansas and the damage occurred in Mississippi.
[3] Under La.R.S. 13:3201(4), Louisiana would clearly have personal jurisdiction over the nonresident manufacturer in Home Gas because, although the tort occurred in Mississippi, the damage occurred in Louisiana and the nonresident manufacturer transacted business in Louisiana.
[4] Under La.R.S. 13:3201(4), Louisiana clearly would have personal jurisdiction over the nonresident manufacturers because, although the torts occurred in Iowa and Illinois, the damage occurred in Louisiana and both manufacturers transacted business in Louisiana.
[5] The opinion does not reflect where the airplane was manufactured, where or to whom it was sold, or where the crash occurred.
[6] We are unable to tell which category Nigro falls into because of insufficient facts.
[7] In Pedelahore, 745 F.2d at 348, the federal court observed that "under the Louisiana long-arm statute there need not be a causal relationship between the nonresident's contacts within the state and the incident giving rise to the action." Our review of the statutes and jurisprudence leads us to a different conclusion.